WILLIAM F. LINNEMANN and ANNA A. LINNEMANN, complainants,

*v.*

LILLIAN M. SUMMERS, defendant.

---

BERTHA STAFFORD, complainant,

*v.*

WILLIAM F. LINNEMANN, ANNA A. LINNEMANN, his wife, and LILLIAN SUMMERS, defendants.

[Decided February 8th, 1924.]

An agent cannot make any secret profit at the expense of his principal, and must repay to his principal such secret profit and also commissions received on the transaction.

---

On Bill, &c.

*Mr. William P. Murphy,* for the complainant.

*Messrs. Osborne, Cornish & Scheck,* for William F. Linnemann and Anna A. Linnemann.

*Messrs. Warren, Britt & Stanton* and *Mr. John Trier,* for Mrs. Lillian M. Summers.

CHURCH, V. C.

The facts in this case are as follows: "On or about October 1st, 1922, William F. Linnemann and Anna A. Linnemann, his wife, owners at that time of property at 45-47 Rutherford Place, North Arlington, Bergen county, N. J., authorized the defendant Lillian M. Summers, a real estate agent of Arlington, N. J., to sell that property for them. Mrs. Summers had represented to the complainants Mr. and Mrs. Linnemann, that she had a purchaser who was willing to pay $7,500, and they authorized her to sell at that price. Several days later Mrs. Summers went to the Linnemann's house and took with her an agreement of sale already prepared in which the purchase price was stated as $7,500, and the purchaser was stated to be Queenie Morley. Queenie Morley is the daughter of the defendant, but that fact was not revealed to the Linnemanns. Mrs. Summers told them that $7,500 was a good price, particularly in view of the fact that Queenie Morley had agreed to pay the entire purchase price in cash.

"The Linnemanns, relying upon the representations made by the defendant, executed the agreement of sale.

"At the time that the defendant made these representations to the Linnemanns she was negotiating with one Bertha Stafford for the sale of the same property for $9,500. She had told Bertha Stafford that the complainants wanted $9,500, but that she would try to get it reduced for her to $9,200, and several days after she told that to Mrs. Stafford she returned to Mrs. Stafford and said that she had succeeded in getting the complainants to reduce their purchase price to $9,200. Mrs. Summers then procured an assignment of the agreement of sale from Queenie Morley to herself and on

December 19th, 1922, she effected the two sales, viz., one from Mr. and Mrs. Linnemann to herself for $7,500 and the other from herself to Bertha Stafford for $9,200. She received from the complainants the sum of $262.50 for commission at the rate of three and one-half per cent. on the selling price of $7,500, and in addition to that sum she pocketed $1,700, difference between the two purchase prices.

"The Linnemanns filed their bill demanding that the defendant return · to them the $262.50 and also the $1,700, making a total of $1,962.50, on the ground that she had fraudulently and secretly made a profit out of the deal while pretending to act as their agent. An answer was filed and the case came on for hearing on pleadings and proof."

Subsequently, Mrs. Bertha Stafford filed a bill against Mr. and Mrs. Linnemann and Mrs. Summers, setting up the sale of the property and demanding that the $1,700 in question, together with cost of putting the premises in repair, should be paid to her. This case was consolidated with that of Linnemann against Summers.

The principal of law that an agent cannot make any secret profit at the expense of his principal is too well known to necessitate the citation of numerous cases or any elaborate discussion. There is no question, whatever, that Mrs. Summers acted in a highly unlawful and unethical manner as a duly licensed real estate agent in attempting to make a profit from a sale of property which had been placed in her hands by one of her clients for sale. 9 Corp. Jur. 539; Nagle v. McCoy, 94 N. J. Eq. 790.

Mrs. Stafford's contention that she should be given the $1,700, plus the cost of putting the premises in repair, seems to me to be without any merit whatever. Mrs. Stafford voluntarily agreed to pay $9,200 for the property and there was no fraud. She moved into the premises before she took title to it. Thereafter she paid the balance of the purchase price and executed mortgages covering the same. She knew what she was doing and the doctrine of caveat emptor certainly applied. Moreover, if she has any action at all, it

seems to me it is at law for damages on account of the alleged unsanitary and dilapidated condition of the premises.

It is unnecessary to discuss the question raised in the brief of Mrs. Stafford's solicitor as to independent advice, except to say that cases on this subject only refer to persons who from extreme age or mental incapacity are not thoroughly competent to manage their own affairs without independent advice.

I will therefore dismiss the bill of Mrs. Stafford and direct that the sum of $1,700 be repaid by Mrs. Summers to Mr. and Mrs. Linnemann, together with the commission of $262.50 with proper interest and costs.